IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JACK VIGLIOTTI,

                Plaintiff,

    v.                            Civil Action No.
                                      9:05-CV-1320 (GTS/DEP)
T. DALY, Correctional Officer and M.
WITHERS, Correctional Sergeant,

                Defendants.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

JACK VIGLIOTTI, *Pro Se*
98-B-2080
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

FOR DEFENDANTS:

HON. ANDREW M. CUOMO         HEATHER RUBINSTEIN, ESQ.
ATTORNEY GENERAL              Assistant Attorney General
Syracuse Office
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Jack Vigliotti, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action against two corrections workers employed by the New York State Department of Correctional Services (the "DOCS") pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. Plaintiff's claim centers upon his temporary assignment to a cell which had been freshly painted and was covered with plexiglass, and the contention that his designation to that cell was prompted by retaliatory motivation and calculated to cause him discomfort. As relief, plaintiff's complaint seeks recovery of compensatory and punitive damages.

Currently pending before the court is a motion by the two named defendants for judgment on the pleadings dismissing plaintiff's claims as facially deficient. Having carefully reviewed plaintiff's complaint, I agree that it fails to disclose the existence of a plausible constitutional deprivation. Accordingly, I recommend that defendants' motion be granted, with leave to the plaintiff to replead, and find it unnecessary to address defendants' alternative qualified immunity argument.

I.   BACKGROUND[1]

Plaintiff is, and was at the times relevant to his claims, a prison inmate entrusted to the care and custody of the DOCS.  *See generally* Complaint (Dkt. No. 1).  On August 15, 2002, plaintiff was temporarily placed in the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, awaiting a further transfer into the Five Points Correctional Facility ("Five Points"), his ultimate scheduled destination.  *Id.* ¶ 5.  Upon his arrival at Auburn, plaintiff was assigned a single inmate cell which had been freshly painted, with a lingering odor of paint fumes, and which additionally was enclosed with plexiglass.[2]  *Id.* ¶¶ 6-7.  Plaintiff maintains that his placement into a plexiglass-enclosed cell with concentrated paint fumes present caused adverse psychological effects never before experienced by him.  Complaint (Dkt. No. 1) ¶¶ 13, 14, 15, and 19.

---

[1]   In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S. Ct. 73 (1994); *DeJean v. County of Nassau,* No. CV-06-6317, 2008 WL 111187, at *1 n.2 (E.D.N.Y. Jan. 8, 2008); *cf. Erickson v. Pardus,* ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007)).

[2]   Plaintiff speculates that the plexiglass cell was ordered freshly painted, knowing that on August 15, 2002, he was due to return to Auburn, where he apparently had been housed on a prior occasion.  *See* Complaint (Dkt. No. 1) ¶ 19.

Although plaintiff complained to prison officials regarding the lack of adequate ventilation, he remained in the assigned cell until approximately 6:30 p.m. on that same day, when a nurse assigned to conduct daily medication rounds directed that he be moved into the facility's mental health unit for observation. *Id.* ¶¶ 10-11. Plaintiff remained in the mental health unit at Auburn until his transfer on August 19, 2002 into Five Points.[3] *Id.* ¶¶ 12-13.

Plaintiff returned to Auburn on October 24, 2002. Complaint (Dkt. No. 1) ¶ 15. Following his arrival at the facility, Vigliotti was issued a misbehavior report which had been authored by defendant Daly on August 15, 2002.[4] *Id.* A disciplinary hearing was conducted concerning the charges set forth in the misbehavior report by Corrections Captain Gummerson, resulting in the dismissal of all charges on November 4, 2002. *Id.* Plaintiff was subsequently transferred into the Great Meadow Correctional Facility on November 29, 2002. *Id.*

---

[3] Plaintiff's complaint alleges that the conditions experienced by him while in the Auburn mental health unit were substandard, and that while there he was harassed by corrections officers. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 11-12. Since plaintiff's complaint does not identify the corrections officers allegedly involved in that conduct, and does not appear to assert a constitutional claim growing out of that period, I have not addressed those allegations in detail.

[4] Plaintiff's complaint does not specify the disciplinary violations cited in that misbehavior report.

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on October 20, 2005.  Dkt. No. 1. Named as defendants in plaintiff's complaint are Corrections Sergeant M. Withers and Corrections Officer T. Daly.  *Id.*  While referencing the First, Eighth, and Fourteenth Amendments to the United States Constitution, plaintiff's complaint sets forth a single cause of action for breach of a duty to protect him from harm against each of the two defendants.  *Id.*  Issue was joined on November 22, 2006 by the filing of an answer on behalf of the two named defendants, denying many of the material allegations contained in plaintiff's complaint including, *inter alia,* those related to plaintiff's placement in a plexiglassed, freshly painted cell, and additionally asserting various affirmative defenses.  Dkt. No. 12.

On June 5, 2008, defendants moved seeking the entry of judgment on the pleadings dismissing plaintiff's complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. No. 33.  Plaintiff has since responded in opposition to defendants' motion, attaching various materials as exhibits to his opposition papers, including excerpts from his mental health records.[5]  Dkt. Nos. 36, 37.  Defendants' motion, which is now ripe

---

[5]    Plaintiff's most recent submission also references an alleged deprivation of due process in connection with his placement in a plexiglass cell.  *See* Plaintiff's

for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Standard of Review

Defendants' motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which governs the entry of judgment on the pleadings.[6]  When analyzing a Rule 12(c) motion, I must apply the same standard as that applicable to a motion under Rule 12(b)(6).  *See, e.g.*,

---

Memorandum (Dkt. No. 36) at pp. 19, 23-25.  Plaintiff's placement in a plexiglass cell for less than a full day, however, is not a sufficiently significant liberty interest deprivation to implicate the procedural due process requirements of the Fourteenth Amendment.  *Cf. Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000) (generally no constitutionally protected liberty interest when an inmate is confined in special housing unit ("SHU") for less than 101 days); *Dawes v. DiBianco*, No. 91-CV-479, 1997 WL 376043, at *5 (N.D.N.Y. July 3, 1997) (McAvoy, J.) (collecting cases and discussing trend in Second Circuit that confinement in SHU for up to a year does not implicate a constitutionally protected liberty interest).

[6]   Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Rule 12(d) further mandates that:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

6

*Sheppard*, 18 F.3d at 150; *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion "is not whether [the] plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12

(2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") (quoting *Twombly,* 127 S. Ct. at 1974*)*. "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (internal quotations omitted); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be

stated. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

    B.    <u>Conditions of Confinement</u>

The essence of plaintiff's claim is that for part of one day he was assigned to a poorly ventilated and freshly painted, plexiglass-covered cell, and that the designation to that cell by the defendants was malicious, evincing an intent to cause him harm. Defendants assert that plaintiff's allegations, even if accepted as true, fail to rise to a level of constitutional significance.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102, 104, 97 S. Ct. at 290, 291; *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citing, *inter alia, Estelle*, 429 U.S. at 103, 97 S. Ct. at 290). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to

Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted). Objectively, the governing test focuses upon whether a prison inmate is subjected to conditions presenting a substantial risk of serious harm. *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979; *see also Baumann v. Walsh*, 36 F. Supp.2d 508, 514 (N.D.N.Y. 1999) (Scullin, J.). Subjectively, for liability to attach a prison official must both appreciate and ignore an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837, 114 S. Ct. 1979. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979); *Waldo*, 1998 WL 713809, at *2 (same).

In order to satisfy the objective element of the Eighth Amendment's cruel and unusual punishment test, a deprivation must be sufficiently serious as to deny the inmate "'the minimal civilized measure of life's necessities.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Wilson,* 501 U.S. at 298, 111 S. Ct. at 2324). Importantly, not every deprivation or uncomfortable prison condition rises to a level of a constitutional significance. A truly *de minimis* deprivation will rarely support a finding of an Eighth Amendment violation. *See, e.g. Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *Govan v. Campbell*, 289 F.Supp.2d 289, 298 (N.D.N.Y. 2003) (Sharpe, M.J.); *see also Suarez v. Kremer*, No. 03-CV-809, 2008 WL 4239214, at *8 (W.D.N.Y. Sept. 11, 2008) (collecting cases). When measuring whether a deprivation is sufficiently serious, from an objective point of view, a court must not only look to the seriousness and likelihood of the potential harm, but additionally must consider

11

> whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling v. McKinney,* 508 U.S. 25, 36, 113 S. Ct. 2475, 2482 (1993) (emphasis in original); *see also Johnson v. Smith,* No. 9:03 CV 1050, 2006 WL 1843292, at *3 (N.D.N.Y. June 29, 2006) (Scullin, J.).

In this instance plaintiff's complaint facially fails to meet either prong of the Eighth Amendment test. Objectively, plaintiff does not allege a sufficiently serious constitutional deprivation, revealing serious risk of harm, to support that element. *Cleveland v. Warden*, No. 80 Civ. 7211, 1981 U.S. Dist. LEXIS 11511, at *7(S.D.N.Y. Mar. 23, 1981) (allegation that plaintiff was exposed to paint fumes for seventeen hours, causing lung damage, did not suffice to state a cause of action under section 1983); *see also Ifill v. Goord*, No. 03-CV-355S, 2007 WL 2874413, at *5-6 (W.D.N.Y. Sept. 27, 2007) (allegation that plaintiff was housed mental health unit and special housing unit subjected to cold temperatures and filthy conditions, and deprived access to toiletries, deemed insufficient to establish a constitutional violation); *Mabery v. Keane*, No. 95 Civ. 1093, 1998 WL

12

148386, at *8 (S.D.N.Y. Mar. 30, 1998) (allegations of unsanitary conditions of confinement, including nearby running of raw sewage requiring inmates to breathe the fumes associated with that burning, found insufficient to state an Eighth Amendment violation); *Brown v. McElroy*, 160 F. Supp.2d 699, 706 (S.D.N.Y. 2001) (allegation that plaintiff was kept in a room which was extremely cold, without clean linens for the bed, toiletries, and clean clothing, found insufficient to state a constitutional claim); *cf Giglieri v. New York City of Dep't of Corrections*, No. 95 CIV 6853, 1997 WL 419250, at *2, 4 (S.D.N.Y. July 25, 1997) (allegation of pre-trial detainee that he was exposed to second-hand tobacco smoke was insufficient to state a claim under the Fourteenth Amendment or the Eighth Amendment).

  Subjectively, plaintiff's allegations similarly fall short of establishing an Eighth Amendment violation. Plaintiff's complaint fails to allege awareness on the part of the defendants of any condition which would expose Vigliotti to a risk of harm and make their failure to remove him from the freshly painted cell anything other than "a mere negligent act, which is not a violation of either the Fourteenth Amendment . . . or the Eighth Amendment ." *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (citations

omitted).

Because plaintiff's complaint fails to make a facial, threshold showing which would satisfy either the objective or subjective element of an Eighth Amendment claim, I conclude that his condition of confinement cause of action is subject to dismissal.[7]

### C. Retaliation

Although plaintiff's complaint sets forth only two causes of action, both alleging defendants failed to protect him from harm, reference is also made within it to allegedly retaliatory motivations for placing him in a plexiglassed, freshly painted cell. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 17-18. Defendants assert that to the extent plaintiff's complaint could be liberally construed to include such a claim, it too is facially deficient.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment,

---

[7] Plaintiff's devotes a significant portion on his complaint arguing that in assigning him to a shielded cell defendants violated DOCS policies and regulations. *See* Complaint (Dkt. No. 1) ¶ 15. It is well established, however, that violations of such regulations are not cognizable under 42 U.S.C. § 1983. *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983); *see also Anderson v. Duke*, No 9:04-CV-0030, 2008 WL 238557, at *6 (N.D.N.Y. Jan 28, 2008) (Mordue, C.J. and Peebles, M.J.) (citations omitted).

a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239

F.3d at 492. If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted). Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two.

Plaintiff's complaint is conspicuously silent regarding the protected activity alleged to have resulted in the adverse action complained of. Absent this component, plaintiff's complaint fails to state a claim of a cognizable claim of retaliation in violation of the First and Fourteenth Amendments. *Colman v. Vasquez*, 142 F. Supp. 2d 226, 239-40 (D. Conn. 2001); *cf. Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp. 2d 240, 243 (dismissing retaliation claim under Title VII where plaintiff failed to allege a protected activity).

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint and supporting materials, although asserting the existence of significant emotional difficulties attributed by him to the incident in issue, in the end asserts only a *de minimis* deprivation associated with his placement for less than a full day in a single, freshly painted cell claimed to be inadequately ventilated due to the presence of plexiglass.  Plaintiff's complaint fails to assert either the existence of a serious risk of harm associated with that deprivation or that the defendants perceived but ignored that risk.  Plaintiff's cruel and unusual punishment is therefore legally deficient.   Moreover, interpreting plaintiff's complaint liberally to include a retaliation claim, it is nonetheless also deficient based upon his failure to allege that he engaged in any protected activity. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for judgment on the pleadings (Dkt. No. 33) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:   November 20, 2008
         Syracuse, NY